## Richmond

HARVEY L. WATSON AND CLIFTON T. CHALK V. FIRST NATIONAL BANK OF NORFOLK.

March 5, 1973.

Record No. 8038.

Present, All the Justices.

*Stanley G. Barr, Jr.; L. Charles Burlage; Canoles, Mastracco, Martone & Barr; Burlage & Burlage,* on brief, for plaintiffs in error.

*Frederick M. Quayle; Rixey & Rixey,* on brief, for defendant in error.

Case submitted on briefs.

HARMAN, J., delivered the opinion of the court.

The trial court entered summary judgment for $5,000 in favor of First National Bank of Norfolk (Bank) jointly and severally against John J. Tate (Tate), Harvey L. Watson (Watson) and Clifton T. Chalk (Chalk). The judgment has become final against Tate, who did not appeal. We granted a writ of error to Watson and Chalk.

The only question here is whether summary judgment should have been awarded against Watson and Chalk.

On September 30, 1969, Tate executed a 60-day note for $5,000 plus interest payable to Bank. Watson and Chalk were endorsers on this note. A handwritten amendment on the face of the note provided: "R once Pay at 2nd M." The parties agree that this language means: "Renew once; pay at second maturity."

The printed body of the note provides: "All parties to this note . . . hereby agree that extension or extensions of the time of payment of this note, or any part thereof, may be made before, at, or after maturity by agreement with any one or more of the parties hereto without notice to or without releasing the liability of any other party to this note . . . ."

The record establishes that Bank was represented in all of its dealings with Tate, Watson and Chalk by Armistead W. Dey (Dey), one of its Vice Presidents. Dey testified that he handled the loan and prepared the note signed by Tate and endorsed by Watson and Chalk. He said there was a "clear understanding" between the parties that the note could be renewed once but that it would be paid at or before the second maturity.

On cross examination Dey testified, without objection, that he "would have no right" after the first maturity to renew the note without the consent of the endorsers.

The note was renewed at its first maturity on November 29. It was also renewed when it subsequently matured on January 28, 1970, March 29, 1970, and May 28, 1970.

Dey testified that Tate, Watson and Chalk were the principals in a new insurance agency, Christian Casualty Insurance Agency, Inc. The loan to Tate was made to provide him with funds to purchase stock in the agency. Bank also made loans to others to enable them to purchase stock in the agency. The insurance agency, at the time the Tate loan was made, had accounts with Bank of approximately $100,000.00.

Dey further testified that Tate, Watson and Chalk were working as a "unit" and that he had a number of conversations with them, individually and jointly, about their progress with the insurance agency. He said that they "would 'cry the blues' and we would renew the note again." While Dey was unable to recall who was present on each occasion when the note was renewed, he insisted that he "was certain" that he had obtained the consent of the endorsers, either in person or by telephone, before each renewal.

Watson and Chalk denied that they ever agreed to a renewal or extension of the note after the first renewal. Each specifically denied he had been consulted about or agreed to renewal of the note in January, 1970, or any of the subsequent renewals.

Both Watson and Chalk testified that they first learned that the Tate note had not been paid on May 7, 1970, after Tate's position as president of the insurance agency had been terminated. They learned this when they visited Dey to "change the signature card" on the agency bank account. Both testified that Dey was advised of Tate's planned departure from Virginia and they advised Dey that he "should get behind him (Tate)."

Dey recalled having a meeting with Watson and Chalk prior to the last renewal of the note on May 28, 1970. He conceded that the note was again renewed after this meeting. When asked whether Watson and Chalk were aware of the May 28 renewal, Dey answered "As far as I know they were."

Here, as in the court below, Bank argues that the handwritten amendment did not change or alter the printed provision of the note authorizing extensions without notice to or the consent of the endorsers.

■ We do not agree. Code § 8.3-118 provides the following rule of construction for commercial paper:

"(b) Handwritten terms control typewritten and printed terms, and typewritten control printed."

Dey, the Bank's duly authorized representative, represented Bank in all of its dealings with Tate, Watson and Chalk. He was called by Bank as its only witness. His testimony about the handwritten amendment to the note and its meaning, which is clear, definite and unequivocal, precludes the holding that Bank urges. *Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922).

■ Rule 3:18, Rules of Court, provides: "Summary judgment shall not be entered if any material fact is genuinely in dispute."

Here there was a direct conflict between the testimony of Dey and the testimony of Watson and Chalk on whether the endorsers consented and agreed to the renewal of January 28 and the subsequent renewals. This was the real issue in the case and the facts in this connection were genuinely in dispute.

The judgment rendered by the trial court against Watson and Chalk is, therefore, reversed and the case is remanded to the trial court for further proceedings.

*Reversed and remanded.*